PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1992
_____


In Re: BARRY L. MICHAEL,
Debtor

CHARLES J. DEHART, III, Trustee,
Appellant


_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-10-cv-01848)
District Judge: Honorable John E. Jones, III
_____

Argued May 7, 2012

Before: SLOVITER, AMBRO,* and ROTH, Circuit Judges

(Opinion filed: October 26, 2012)

_____

* Due to the passing of the Honorable Louis H. Pollak, Judge
Ambro was added to complete this panel.

1

James K. Jones, Esquire (Argued)
Agatha R. McHale, Esquire
Charles J. DeHart, III, Esquire
Standing Chapter 13 Trustee Office
8125 Adams Drive, Suite A
Hummelstown, PA  17036

      Counsel for Appellant

Richard J. Bedford, Esquire (Argued)
Ronda J. Winnecourt, Esquire
Office of the Chapter 13 Trustee
600 Grant Street
 3250 USX Tower
Pittsburgh, PA   15219-0000

      Counsel for Amicus Appellant

John J. DiBernardino, Esquire (Argued)
417 Iron Street
P.O. Box 599
Lehighton, PA   18235-0000

      Counsel for Debtor-Appellee

Irv Ackelsberg, Esquire (Argued)
Langer, Grogan & Diver
1717 Arch Street
 The Bell Atlantic Tower, Suite 4130
Philadelphia, PA   19103-0000

      Counsel for Amicus Appellee

2

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This appeal raises a question of first impression involving the interpretation of Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, in the common circumstance of a debtor converting his or her case from a Chapter 13 adjustment of debts under a reorganization plan to a Chapter 7 liquidation of assets and distribution to creditors.[1]  If at the time of conversion the Chapter 13 trustee is holding funds acquired post-petition by the

---

[1] The primary goal of a Chapter 13 case is the confirmation and completion of a reorganization plan, which results in the discharge of the Chapter 13 debtor's debts.  *See* 11 U.S.C. § 1328(a) (providing for discharge "as soon as practicable after completion by the debtor of all payments under the plan").  If a debtor cannot confirm or complete a plan, his case most likely either will be converted to a Chapter 7 liquidation or dismissed. *But see id.* § 1328(b) (detailing the circumstances in which a debtor may receive a discharge despite not completing a plan). Empirical studies show that about a third of Chapter 13 debtors successfully confirm and complete a plan.  *See, e.g.*, Katherine Porter, "The Pretend Solution: An Empirical Study of Bankruptcy Outcomes," 90 Tex. L. Rev. 103, 107–11 (2011) (summarizing studies published from 1989 through 2006, all of which concluded that only one in three cases filed under Chapter 13 ended in a completed reorganization plan, and noting that the ratio of discharge to conversion or dismissal has "persisted for more than thirty years").

debtor for eventual distribution to creditors under a confirmed Chapter 13 reorganization plan, must the trustee return the funds to the debtor or distribute them to creditors under the provisions of the plan?  The District Court affirmed the Bankruptcy Court's holding that those funds are to be returned to the debtor at the time of conversion.  We agree and thus affirm the District Court's decision.

## I.  Facts and Procedural History

Appellee Barry Michael filed a voluntary petition under Chapter 13 of the Bankruptcy Code in September 2005.  In June 2006, the Bankruptcy Court confirmed his Chapter 13 reorganization plan (the "Plan").  The Plan provided that Michael would pay approximately $277 per month to the Chapter 13 trustee, Appellant Charles J. DeHart, III (the "Trustee"), for 53 months, and the Trustee would direct the monies received to creditors holding secured and priority claims. Among these creditors was GMAC Mortgage, which held a mortgage on Michael's residence.  Michael agreed also to make regular mortgage payments to GMAC outside of the Plan.  The Plan further provided that, to the extent funds were available, creditors holding unsecured claims would be paid *pro rata*.  To complete his bargain and fund the Plan, Michael allowed his wages to be attached and paid directly to the Trustee.

Michael, however, was unable to make mortgage payments to GMAC outside of the Plan, and in August 2006 the Bankruptcy Court granted GMAC relief from the automatic stay to allow it to foreclose on Michael's residence.  Because Michael did not move to amend the Plan or modify the wage attachment order, the Trustee continued to receive automatic payments from Michael's employer.  When the Trustee

attempted to forward the funds to GMAC as provided by the Plan, GMAC refused to accept the payments (ostensibly because it wanted to foreclose—pun intended—an estoppel and/or waiver defense to its mortgage foreclosure). The funds continued to accumulate in the Trustee's account until Michael moved to convert his case to Chapter 7 in October 2009.

Several days after the conversion, Michael filed a motion seeking an order compelling the return to him by the Trustee of the accumulated funds, which amounted to $9,181.62. The Trustee objected, arguing that the funds should be distributed *pro rata* to unsecured creditors as provided by the Plan.

Both the Bankruptcy and District Courts noted that the Bankruptcy Code does not provide a clear answer on whether undistributed plan payments held by a Chapter 13 trustee should be returned to the debtor or distributed to creditors under a plan when a Chapter 13 case is converted to Chapter 7. Each court assessed the main arguments advanced by the parties and discussed by other (mainly bankruptcy) courts regarding statutory language, legislative intent, and the goals of the Code. They both concluded that the funds must be returned to Michael. The Trustee filed a timely notice of appeal.[2]

---

[2] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334. The District Court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. Because a district court sits as an appellate court to review a bankruptcy court, we review a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In*

## II.  Discussion

We have a pure question of law—what does the Bankruptcy Code require a Chapter 13 trustee to do with undistributed funds received pursuant to a confirmed Chapter 13 plan when that Chapter 13 case is converted to Chapter 7?  Not only does the Code provide no clear answer to this question, in reading it one finds an internal tension, as separate provisions seemingly lead to divergent results.

Both the Bankruptcy and District Courts began their analyses, as do we, with the Bankruptcy Reform Act of 1994's amendments to the Bankruptcy Code.  Included in those amendments was § 348(f), on which this appeal ultimately turns.  That section provides that on conversion of a case from Chapter 13 to another Chapter, "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion."  11 U.S.C. § 348(f)(1)(A) (emphasis added).  In the case of a bad faith conversion, "the property of the estate in the converted case shall consist of the property of the estate *as of the date of conversion*."  *Id.* § 348(f)(2) (emphasis added).

---

*re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010).

The Chapter 13 Standing Trustees in our Circuit filed an *amicus* brief in support of the Trustee.  The National Association of Consumer Bankruptcy Attorneys submitted an *amicus* brief in support of Michael.

6

Prior to the addition of § 348(f), courts considering the disposition of funds held by a Chapter 13 trustee at the time of conversion reached three different results: the funds were (i) property of the new Chapter 7 estate, (ii) property of the debtor, or (iii) property of creditors under a confirmed Chapter 13 plan. *See, e.g.*, *In re Boggs*, 137 B.R. 408, 411 (Bankr. W.D. Wash. 1992) (concluding that the debtor is entitled to undistributed funds held by the Chapter 13 trustee on conversion to Chapter 7); *Waugh v. Saldamarco (In re Waugh)*, 82 B.R. 394, 400 (Bankr. W.D. Pa. 1988) (holding that the Chapter 13 trustee must pay out undistributed funds to the creditors as provided by the Chapter 13 plan on conversion); *In re Tracy*, 28 B.R. 189, 190 (Bankr. D. Me. 1983) (holding that the Chapter 13 trustee must turn over undistributed funds to the Chapter 7 trustee on conversion). Courts of Appeals primarily debated whether the funds became property of the Chapter 7 estate. *Compare Calder v. Job (In re Calder)*, 973 F.2d 862, 865–66 (10th Cir. 1992) (holding that post-petition funds that were part of the Chapter 13 estate became property of the Chapter 7 estate on conversion to Chapter 7), *Matter of Lybrook*, 951 F.2d 136, 138 (7th Cir. 1991) (same); and *Armstrong v. Lindberg (In re Lindberg)*, 735 F.2d 1087, 1089–90 (8th Cir. 1984) (same), *with Bobroff v. Cont'l Bank (In re Bobroff)*, 766 F.2d 797, 803–04 (3d Cir. 1985) (holding that a post-petition tort claim did not become property of the Chapter 7 estate on conversion).

Section 348(f) removed the first result, but did not resolve explicitly whether the Chapter 13 trustee should give the funds to the debtor or distribute them to creditors under the confirmed Chapter 13 plan. As developed below, § 348(f)'s language and legislative history express Congress's preference as to what property belongs to a debtor after conversion, and ultimately direct our decision.

To understand the full import of § 348(f), we provide a brief overview of a Chapter 13 case. The filing of a Chapter 13 petition creates an estate consisting of all of the debtor's legal and equitable interests in property. 11 U.S.C. §§ 301(a), 541(a).[3] "[I]n addition to the property specified in section 541" that exists at the filing of the Chapter 13 petition, the estate includes "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first . . . ." *Id.* § 1306(a). This includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted . . . ." *Id.* § 1306(b). As is the case here, these earnings ordinarily fund the Chapter 13 plan. *See, e.g.*, 8 *Collier on Bankruptcy* ¶ 1322.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) ("Chapter 13 was designed to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income.").

A debtor must begin making payments to the Chapter 13 trustee "not later than 30 days after the date of the filing of the plan or the order for relief [defined below], whichever is earlier . . . ." 11 U.S.C. § 1326(a)(1). The trustee must retain these payments "until confirmation or denial of confirmation [of

---

[3] In pertinent part, § 301 reads: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." Section 541(a) provides that "[t]he commencement of a case under section 301 . . . . creates an estate."

a plan]. . . . If a plan is not confirmed, the trustee shall return any such payments not previously paid . . . to the debtor, after deducting any unpaid claim allowed under section 503(b)." *Id.* § 1326(a)(2).

Confirmation of a reorganization plan under Chapter 13 affects the estate, debtor, creditors, and Chapter 13 trustee. The confirmed plan vests all of the property of the estate in the debtor, *id.* § 1327(b); binds the debtor and its creditors, *id.* § 1327(a); and obligates the trustee to distribute the debtor's payments under the plan to creditors, *id.* § 1326(a)(2), (c).[4] At any time during the Chapter 13 proceeding, the debtor has a near absolute right to convert his case. *Id.* § 1307(a) ("The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable."). Regardless when conversion takes place, it "does not effect a change in the date of the filing of the petition." *Id.* § 348(a).

---

[4] In pertinent part, § 1326(a)(2) reads: "If a plan is confirmed, the trustee shall distribute any such payment [made under § 1326(a)(1)] in accordance with the plan as soon as is practicable." Section 1326(c) similarly states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." Sections 1327(a) and (b), respectively, provide that: "[t]he provisions of a confirmed plan bind the debtor and each creditor," regardless whether a creditor accepted the plan; and "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

9

Conversion also "terminates the services" of the Chapter 13 trustee. *Id.* § 348(e). Though his services are ended after conversion, the trustee is required to account for the funds that came into his possession by filing a final report under Federal Rule of Bankruptcy Procedure 1019(5)(B)(ii). In addition, if the case is converted prior to confirmation of a plan, the trustee must return any payments held by him to the debtor after deducting adequate funds for him to pay allowed administrative expense claims. *See* 11 U.S.C. § 1326(a)(2).

Accordingly, when a debtor converts a Chapter 13 case to Chapter 7, the order converting the case is effectively backdated to the time of the order for relief under Chapter 13, which is the date of the filing of the Chapter 13 petition. *See id.* § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."). Section 348(f), to repeat, states that "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor as of the date of conversion." *Id.* § 348(f)(1) (emphasis added). Because under § 348(a) "the date of the filing of the petition" is the date the debtor filed the Chapter 13 petition, this suggests that property of the Chapter 13 estate acquired *post*-petition is excluded from the property of the new Chapter 7 estate. But does that property belong to the debtor or to its creditors waiting for Chapter 13 plan payments?

It is here we turn to § 1327(b), which vests all property of the Chapter 13 estate in the debtor on plan confirmation. The implication is that property held by the Chapter 13 trustee after plan confirmation is "under the control of the debtor as of the date of [a later] conversion" for purposes of § 348(f)(1). Even before the addition of § 348(f), the Ninth Circuit Court arrived

10

at this conclusion regarding the vesting of monies received by the Chapter 13 trustee from the debtor during the Chapter 13 proceeding. *Arkison v. Plata (In re Plata)*, 958 F.2d 918 (9th Cir. 1992).

> Confirmation . . . binds the creditors and the debtor to the provisions of the plan and vests all property of the estate in the debtor except as otherwise provided in the plan. The monies received by the Chapter 13 trustee from the debtors during the Chapter 13 proceeding became part of the Chapter 13 estate. The debtors' creditors acquired a nonvested interest in these monies by the plan and the order confirming the plan. A Chapter 13 creditor's interests do not vest until the monies are distributed. . . . The debtors' interests in the monies have not been extinguished.

*Id.* at 922 (quoting *Resendez v. Lindquist*, 691 F.2d 397, 399–400 (8th Cir. 1982) (Bright, J., dissenting)). Moreover, under § 348(e), after conversion the services of the Chapter 13 trustee are terminated, which seemingly renders it powerless to make payments to creditors under a Chapter 13 plan.

Nevertheless, confirmation of a plan is a significant event in a Chapter 13 case. This has led several courts, in decisions primarily written before the addition of § 348(f), to conclude that undistributed plan payments held by a Chapter 13 trustee should be disbursed to creditors after conversion. They reason that the funds should be treated as trust funds for the benefit of creditors, or that creditors held a vested interest in the funds at the time the trustee received them, because the debtor

11

voluntarily parted with the funds and §§ 1326(a)(2) and (c) state that the trustee "shall" distribute payments as provided by the plan. *See, e.g.*, *In re Galloway*, 134 B.R. 602, 603 (Bankr. W.D. Ky. 1991) (holding that after a debtor "voluntarily part[s] with wages and deliver[s] them to the custody of a trustee in performance of a confirmed Chapter 13 plan, the creditors have a vested right to receive those payments pursuant to the plan"); *In re Waugh*, 82 B.R. at 400 (observing that the word "shall" in § 1326(a)(2) "creates the condition of a trust. Creditors have the right to the funds in an active confirmed chapter 13 plan on payment by the debtor"); *In re Rutenbeck*, 78 B.R. 912, 913 (Bankr. E.D. Wis. 1987) ("[T]he undistributed funds ought to be treated as trust funds for the benefit of the creditors under the confirmed plan and distributed to those creditors in accordance with the terms of the plan."); *In re Lennon*, 65 B.R. 130, 137 (Bankr. N.D. Ga. 1986) (holding that the "mandatory provision" of § 1326(a)(2) "has the effect of vesting an interest in creditors provided for by a confirmed plan in all payments pursuant to such plan").

These courts also emphasize that a confirmed plan binds creditors to a new relationship with a debtor, one that requires creditors to forgo certain rights in exchange for the debtor's promise to make payments under the plan. *See, e.g.*, *Ledford v. Burns (In re Burns)*, 90 B.R. 301, 304 (Bankr. S.D. Ohio 1988) ("[A] Chapter 13 Plan represents a legislatively sanctioned, and judicially approved[,] new series of rights and responsibilities among the debtor and the debtor's creditors."). Thus despite the termination of the Chapter 13 trustee's services after conversion, they conclude that a "valid confirmation order of the Bankruptcy Court should not be made a nullity by a later failure of the debtor to observe a confirmed plan." *Spero v. Porreco (In re Porreco)*, 426 B.R. 529, 537 (Bankr. W.D. Pa. 2010) (quoting *In*

*re Waugh*, 82 B.R. at 400); *see also In re Pegues*, 266 B.R. 328, 336–37 (Bankr. D. Md. 2001) ("Although the service of the chapter 13 trustee is terminated by Section 348(e), it is clear that Congress intended that the chapter 13 trustee shall wind up the affairs of the chapter 13 estate, including disbursing monies on hand to the appropriate recipient."); *In re Burns*, 90 B.R. at 304 ("While it would be inappropriate to ignore other provisions of the Bankruptcy Code, it would be equally inappropriate to fail to judicially implement an order that the court has previously entered, particularly one in which the debtors voluntarily proposed the provisions, advocated their adoption and requested the court to order as binding upon the debtors and their creditors.").

Additionally, these courts further cite § 1326(a)(2) for its language requiring the Chapter 13 trustee to return any payments held by it to the debtor if a plan is not confirmed (after deducting funds for it to pay allowed administrative expense claims). Read alone, this section arguably indicates that if a plan is not confirmed the trustee must return accumulated funds to the debtor, and that if a plan is confirmed the trustee, by implication stemming from the absence of similar language, is required to distribute accumulated funds to creditors as provided by the plan. That is, if Congress intended for undistributed funds held by the trustee post-confirmation to be returned to a debtor, it could have included similar language regarding post-confirmation payments in § 1326(a)(2). *See In re Burns*, 90 B.R. at 304. Moreover, holding that the funds are to be returned to debtors produces the anomalous result that all or a portion of administrative expense claims may be paid in a Chapter 13 case converted pre-confirmation, but not in one converted post-confirmation.

In contrast, other courts, again in decisions written primarily before the addition of § 348(f), have read the same provisions of the Code and concluded that the debtor is entitled to undistributed plan payments held by the Chapter 13 trustee at the time of conversion. These courts focus on § 348(a) and the Congressional policy of encouraging debtors to attempt Chapter 13 without penalty if the attempt fails. *See, e.g.*, *In re Boggs*, 137 B.R. at 411 ("[T]he Congressional policy of encouraging debtors to repay their creditors via Chapter 13 is furthered by debtors (and their counsel) knowing they will not be penalized for attempting Chapter 13."); *McCullough v. Luna (In re Luna)*, 73 B.R. 999, 1003 (N.D. Ill. 1987) (concluding that § 348(a), "which determines the operative date for the filing of [the debtor's] Chapter 7 proceeding, protects [the debtor] from being penalized by providing that the Chapter 7 estate is deemed to have been filed at the time the Chapter 13 estate was filed"); *In re Bullock,* 41 B.R. 637, 640 (Bankr. E.D. Pa. 1984) ("[T]he case is deemed to have been filed as a chapter 7 proceeding and that portion of the debtor's postpetition wages, which were deducted from his salary, were deposited in the chapter 7 estate although they were not properly includable therein . . . . Since the deducted wages were not part of the chapter 7 estate, the debtor is entitled to recover such wages in full . . . .").

In response to those courts holding that undistributed funds should be paid out to creditors, contrary rulings have reasoned that conversion effectively vacates the confirmed plan. "[Section] 1307(a) gives debtors the absolute right to convert to Chapter 7 at any time. Analytically, a Chapter 13 plan has no relevance to or import in a case under any other chapter. . . . If a plan is vacated or no longer in effect, a Chapter 13 trustee has no authority for further disbursement to creditors." *In re Boggs*, 137 B.R. at 410; *see also In re Doyle*, 11 B.R. 110, 111 (Bank.

14

E.D. Pa. 1981) (holding that, once a case is converted, the order confirming the plan is no longer effective). Other decisions simply conclude that the termination of the trustee's services "precludes the Trustee from taking any action with respect to these funds after the conversion." *In re Luna*, 73 B.R. at 1002; *see also In re Perkins*, 36 B.R. 618, 620 (Bank. M.D. Tenn. 1983) (holding that the Chapter 13 trustee loses all authority to act when the conversion becomes effective).

These courts also find nothing "unjust" in returning undistributed plan payments to a debtor. Rather, they note that creditors ultimately will receive as much, if not more, than they would have received if the debtor initially had filed under Chapter 7.

> Since § 1325(a) requires a finding that the holder of each allowed unsecured claim will receive not less than the holder would receive under Chapter 7 to confirm a plan, it is not self-evident that the dilution effect of treating pre-conversion creditors as pre-petition creditors in the converted Chapter 7 necessarily inflicts a net loss on actual pre-petition creditors. Those creditors have had the benefit of distribution from debtors' wage contributions, which would not have been available to them under Chapter 7. In all, there seems no inherent inequity in refunding undisbursed wage contributions to debtors on conversion.

*In re Boggs*, 137 B.R. at 410.

15

Notwithstanding strong arguments regarding the binding effect of plan confirmation, those courts holding that undistributed payments under a confirmed Chapter 13 plan should be disbursed to creditors after conversion overlook that no provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors. Rather, property comes into and flows out of the estate. In the context of a Chapter 13 case, § 1327(b) vests all property of the Chapter 13 estate in the debtor on confirmation of the plan. Thus when the debtor transfers funds to the Chapter 13 trustee to fulfill its obligations under a confirmed plan (or, as here, wages are assigned directly to the Chapter 13 trustee under a garnishment order), the funds become part of the estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors. Also, §§ 1326(a)(2) and (c) only address the obligation of the trustee to distribute payments in accordance with a confirmed plan; they do not vest creditors with any property rights.

Conversion to a Chapter 7 case necessarily ends the Chapter 13 case, which also terminates that Chapter 13 estate. Section 348(f) clarifies what becomes of property of the now nonexistent Chapter 13 estate. It provides that property of the Chapter 7 estate "consist[s] of property of the estate, *as of the date of filing of the [Chapter 7] petition, that remains* in the possession of or is *under the control of the debtor on the date of conversion*." 11 U.S.C. § 348(f)(1) (emphases added). Because § 1327(b) vests all property of the Chapter 13 estate in the debtor, including any post-petition property held by the Chapter 13 trustee at the time of conversion (such as funds transferred to the estate for eventual distribution to creditors), on conversion

16

property of the Chapter 13 estate usually is "under the control of the debtor."[5]  And because § 348(a) establishes that conversion does not change the effect of the Chapter 13 petition's filing, the Chapter 7 petition date is deemed to be the same date that the debtor began the Chapter 13 case.  Hence property acquired post-petition that is in the Chapter 13 estate at the time of conversion is not property of the new Chapter 7 estate.  Rather, the debtor retains a vested interest in the property, and thereby the property reverts to the debtor on conversion, assuming that the debtor does not convert in bad faith.[6]  Moreover, absent

---

[5] Not all property necessarily will meet this requirement.  For example, a debtor whose title to particular property is terminated by a divorce decree while his Chapter 13 case is pending no longer has control of the property when the case is converted to Chapter 7, and thus the property is not part of the Chapter 7 estate after conversion even though it was included initially in the Chapter 13 estate. *See, e.g.*, *Yoon v. Krick (In re Krick)*, 373 B.R. 593, 608 (Bankr. N.D. Ind. 2007) (holding that a parcel of real estate that was included in a couple's Chapter 13 estate at the time of the filing of their Chapter 13 petition, and in connection with marital dissolution proceedings was determined to be the property of the parents of the former wife debtor, was not property of that debtor's converted Chapter 7 estate because she did not have an interest in the real estate and thus it was not under her control).

[6] On the issue of vesting, the Trustee draws our attention to § 349(b)(3), which provides that the dismissal of a case under the Bankruptcy Code, including a Chapter 13 case, "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."  None of the sub-sections of § 348 contains similar

17

anything to the contrary (and we know of nothing), by providing that a debtor who converts in bad faith is not entitled to this post-petition property, § 348(f)(2) logically requires that a debtor receive the property if he acts in good faith.

---

"revesting" language. As such, it may be argued that Congress intended to distinguish the two methods of terminating an estate (conversion and dismissal), and that if it meant for property of the estate to "revest" in the debtor on conversion, it would have included similar language in § 348. *See In re Plata*, 958 F.3d at 923 (Brunetti, J., dissenting) (distinguishing §§ 348 and 349). However, in the Chapter 13 context this argument overlooks that (i) under § 1326(a)(2) the trustee must return all payments held by it to the debtor if a plan is not confirmed, or (ii) under § 1327(b) property of the estate already is vested in the debtor at the time of the conversion after confirmation of a plan. Sections 348 and 349 are broad provisions applicable to every Chapter of the Bankruptcy Code. The specific provisions of Chapter 13 supersede any distinction that may be read into these proceeding general provisions.

Moreover, if a Chapter 13 debtor is concerned about obtaining funds held by the Chapter 13 trustee, he can dismiss his case rather than convert. As noted by the Ninth Circuit Court, we can discern "no justification for requiring a debtor to dismiss, rather than convert . . . [,] in order to preserve his exemption rights. Aside from creating a trap for the unwary, such a requirement would merely elevate form over substance and inject a needless degree of extra work on the part of all concerned." *In re Plata*, 958 F.2d at 922; *see also In re Boggs*, 137 B.R. at 410 ("Debtors, whose motion was prompted in part by health problems, are willing to have their case dismissed if necessary to obtain the funds the Trustee holds.").

18

We also believe that returning undistributed funds to the debtor better aligns with the Chapter 13 trustee's limited duties post-conversion and the effect of conversion on a confirmed Chapter 13 plan. Though the trustee must account for the funds that came into his possession by filing a final report after conversion under Federal Rule of Bankruptcy Procedure 1019(5)(b)(ii), it does not follow that he is permitted to distribute funds under a plan that is no longer operative, particularly if those funds remain vested in the debtor until distribution. In light of § 348(e)'s termination of the trustee's services post-conversion, his duties thereafter should be narrowly construed. If a Chapter 13 case is converted to a Chapter 7 case after plan confirmation, the vested funds revert to the debtor, and their return should be considered part of the Chapter 13 trustee's short list of remaining duties.[7]

---

[7] In the pre-confirmation context, the trustee is obligated to pay allowed administrative expenses from accumulated payments he is holding. *Id.* § 1326(a)(2). Though this creates the anomalous outcome that if a Chapter 13 proceeding is converted pre-confirmation administrative expense claims will be paid from undistributed plan payments, but if the proceeding is converted post-confirmation no administrative expense claims can be paid from undistributed plan payments, this inconsistency is addressed by the Federal Rules of Bankruptcy Procedure. Rule 1019(6) provides for the filing after conversion of pre-conversion administrative expense claims. Fed. R. Bank. P. 1019(6) ("Upon the filing of the schedule of unpaid debts incurred after commencement of the case and before conversion, the clerk, or some other person as the court may direct, shall give notice to those entities listed on the schedule of the time for filing a request for payment of an administrative expense . . . .").

The legislative history of § 348(f) supports that Congress's intended outcome is that payments held by the Chapter 13 trustee revert to the debtor on conversion. Congress stated that it was overruling the holdings of *Matter of Lybrook* and similar cases, and "adopting the reasoning" of our decision in *Bobroff*. H.R. Rep. No. 835, 103d Cong., 2d Sess. 57 (1994). It included the following illustration of the "serious disincentive to file chapter 13 filings" it sought to eliminate with § 348(f). *Id.*

> [A] debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home . . . to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

---

In addition, if a debtor continues a Chapter 13 case until a plan is confirmed before converting merely to escape the trustee's payment of administrative expense claims under § 1326(a)(2), the debtor should be found to have converted in bad faith under § 348(f)(2), and all post-petition property should be awarded to the Chapter 7 estate to be distributed to creditors, including those holding administrative expense claims.

*Id.* By analogy from this example, a debtor who contributes post-petition earnings to the Chapter 13 estate under a confirmed plan when the Chapter 13 trustee has not distributed those funds to creditors should not lose those earnings on conversion. Section 348(f)(1) provides that the earnings are not property of the new Chapter 7 estate. The Chapter 7 trustee thus cannot transfer those earnings to unsecured creditors. Holding that the Chapter 13 trustee must disburse the earnings to creditors under the Chapter 13 plan after conversion would result in creditors receiving a portion of the Chapter 13 estate when the legislative history of § 348(f) suggests that this property belongs to the debtor.

Such an outcome also would dissuade debtors from filing under Chapter 13. Encouraging them to attempt to repay their debts through a reorganization plan rather than liquidate was the reasoning underlying our decision in *Bobroff*. We noted that

> [i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13 -- which must be voluntary -- a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts . . . ."

*Bobroff*, 766 F.2d at 803 (quoting *In re Hannan*, 24 B.R. 691, 692 (Bankr. E.D.N.Y. 1982)). In this context, holding that the

Chapter 13 trustee must distribute undisbursed plan payments to creditors would contravene Congress's reasoning in adopting § 348(f).

Additionally, in adding § 348(f) Congress rejected the analysis of those Courts of Appeals holding that undistributed funds after Chapter 13 plan confirmation belong to creditors. Those Courts based their decisions on fairness to creditors, concluding that "a rule of once in, always in[,] is necessary to discourage strategic, opportunistic behavior that hurts creditors . . . ." *Matter of Lybrook*, 951 F.2d at 137. To account for such "game-the-system" behavior, Congress included § 348(f)(2), which in effect "gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted [here, Chapter 7] case." H.R. Rep. No. 835, 103d Cong., 2d Sess. 57 (1994). The punishment for acting in bad faith is that property that otherwise would belong to the debtor goes instead to his Chapter 7 estate for distribution to creditors. But, as already noted, if a debtor does not act with bad faith in converting, logically the property should not go automatically to creditors; otherwise the penalty for a bad faith conversion would be diminished significantly.

Indeed, since the passage of § 348(f), all Courts of Appeals that have considered the disposition of a Chapter 13 estate's property on conversion to Chapter 7 have concluded that the policy reasoning we expressed in *Bobroff* now has become settled law.[8] *See Stamm v. Morton (In re Stamm)*, 222 F.3d 216,

---

[8] The Trustee argues that the reasoning of *Bobroff* does not apply here because it did not involve a confirmed plan. Though

217–18 (5th Cir. 2000) (noting that in *Baker v. Rank (In re Baker)*, 154 F.3d 534 (5th Cir. 1998), "[w]e stated that Congress added Section 348(f) 'to resolve the circuit split,' quoted the relevant statutory language, and noted that Congress 'took issue with *In re Lybrook*.' The clear implication . . . is that Section 348(f)(1), where applicable, establishes that the post-petition income does not remain property of the estate upon conversion." (quoting *In re Baker*, 154 F.3d at 536 n.2)); *Young v. Key Bank of Maine (In re Young)*, 66 F.3d 376, 378 (1st Cir. 1995) (concluding that post-petition contributions of income by the debtor pursuant to a confirmed plan were not property of the Chapter 7 estate on conversion and noting that "[t]he Bankruptcy Reform Act of 1994 answered the very question that confronts us. It essentially codified the *Bobroff* rule . . ."). *See also Bell v. Bell (In re Bell)*, 225 F.3d 203, 217 (2d Cir. 2000) (observing that "[i]n the Bankruptcy Reform Act of 1994, Congress resolved this circuit split . . . by enacting 11 U.S.C. § 348(f)"); 8 *Collier on Bankruptcy* ¶ 348.07[1] ("The addition of [§ 348(f)] clarified that Congress had intended the result reached by cases that had not included in the postconversion chapter 7 estate the property acquired by the debtor during the preconversion chapter 13 case.").

---

confirmation of a plan is a significant event in a Chapter 13 case, nothing in *Bobroff* suggests the pre-confirmation status of that bankruptcy case was critical to our reasoning, nor does anything in the language of § 348(f) or its legislative history indicate Congress's intent that bankruptcy courts treat undistributed post-petition property differently depending on whether the Chapter 13 case was converted before or after confirmation of the plan.

Overall, a textual reading of § 348(f), particularly in light of its legislative history, leads us to conclude that undistributed plan payments held by a Chapter 13 trustee at the time of conversion must be returned to the debtor absent bad faith. This result furthers Congress's preference that on conversion to Chapter 7 a Chapter 13 debtor receive all post-petition property that is held by the Chapter 13 trustee, but still is under the control of the debtor, so that debtors are encouraged to attempt to repay their debts through reorganization rather than liquidation.

We recognize that a practical consequence of this method of encouragement is that, when a debtor converts to Chapter 7 after a Chapter 13 plan has been confirmed, the total amount of payments to creditors under the plan will depend on the timing of conversion and the practices of the Chapter 13 trustee. The Bankruptcy Code requires the Chapter 13 trustee to make disbursements "as soon as practicable." 11 U.S.C. § 1326(a)(2). In practice, the most efficient method of administering payments may be for the trustee to accumulate and distribute them to creditors at an established time. *See, e.g.*, *In re Hardin*, 200 B.R. 312, 313 (Bankr. E.D. Ky. 1996) (noting that "often some accumulation will occur . . . prior to the making of a distribution to creditors"). For example, some trustees make plan disbursements twice a month, while some only once a month. Or a trustee may be holding funds for a reason particular to a case, as here. Section 348(f)(2)'s bad faith provision may correct for a debtor's opportunistic behavior, but outside a finding of bad faith it will not prevent a converting debtor receiving funds intended initially for Chapter 13 creditors. To deal with this potential happenstance, we foresee that creditors

will request more frequent distributions from the Chapter 13 trustee.[9]

---

[9] Creditors may avail themselves of other options to increase the likelihood that they will receive payments made by a debtor under a confirmed plan.

(1)  If a Chapter 13 trustee is accumulating funds because a creditor is refusing to receive payments under the plan, as here, creditors can move to modify the plan.  *See* 11 U.S.C. § 1329(a)(1) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the . . . holder of an allowed unsecured claim, to . . . increase or reduce the amount of payments on claims of a particular class provided for by the plan.").

(2)  Creditors can move to compel the trustee to make distributions under the plan immediately after the debtor files its motion to convert.

(3)  Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Creditors can object to a proposed plan that does not provide that plan payments vest in creditors immediately on receipt by the Chapter 13 trustee.  They likewise can request that similar language be included in the Bankruptcy Court's order confirming the plan.  Though we do not rule on the issue, such language may be sufficient to remove undistributed plan payments held by the trustee from property "under the control of the debtor on the date of conversion."  11 U.S.C. § 348(f)(1).

25

*   *   *   *   *

As applied here, when the Plan was no longer feasible, Michael exercised the right to convert his case to Chapter 7 and sought the return of his post-petition earnings still in the Trustee's possession. Because there is no evidence that he converted in bad faith, those funds are his property by virtue of § 348(f), and should not be distributed to his creditors. The Bankruptcy and District Courts' decisions reflect the result that Congress contemplated in enacting § 348(f). We thus affirm.

*In re:  Barry L. Michael*

No. 11-1992

---

**ROTH**, <u>Circuit Judge</u>, <u>Dissenting</u>:

Barry Michael converted his bankruptcy from Chapter 13 to Chapter 7.  The question we must answer is whether Michael's undistributed post-confirmation, but pre-conversion, wages, which were paid to the Chapter 13 trustee pursuant to the confirmed reorganization plan, should be distributed to his creditors pursuant to the plan or returned to Michael.  The Majority concludes that the addition of 11 U.S.C. § 348(f) to the Bankruptcy Code mandates that the funds revert to Michael.  I respectfully disagree.  The language of § 348(f) does not require such a result.

I turn first to the context in which this situation is most likely to occur.  When a Chapter 13 plan of reorganization has been confirmed, the debtor will make regular payments to the Chapter 13 trustee.  In many cases, the funds come from a wage attachment as happened here.  At regular intervals -- monthly, bi-monthly -- the trustee, pursuant to § 1326(c), shall pay out the funds to the creditors as provided for in the confirmed plan.  The trustee is the conduit for the funds to get to the creditors.  Thus, the funds held by the trustee prior to these pay-outs do not build up significantly.  If, ultimately, the debtor cannot keep up with the provisions of the plan and decides to convert to Chapter 7, the accumulated funds in the hands of the trustee are not of a sizeable amount.  Thus, there has been little reason to dispute their disposition.

1

The reason for the accumulation of the funds here was because GMAC Mortgage refused to accept the payments pursuant to the plan after August 15, 2006, and sent the checks back to the trustee. Michael had been unable to keep up his own regular payments on the mortgage; as a result, on August 15, GMAC Mortgage obtained relief from the automatic stay in order to foreclose. Michael's wage attachment, however, continued on until October 2009 when he converted his bankruptcy to a Chapter 7. Although the plan provided for distribution to other secured and unsecured creditors, the trustee did not make payments to them. For that reason, more than $9,000 accumulated in the hands of the trustee. During this three year period, either Michael or the trustee could have requested an amendment to the plan. Neither did so. Michael continued to make payments for the benefit of his creditors. He also continued to enjoy the benefits of a Chapter 13 plan.[1]

There is little precedent to assist us in resolving this situation. There is evidence, however, that at least within the Third Circuit, the custom has been that, when a debtor converted a Chapter 13 bankruptcy to a Chapter 7, the Chapter 13 trustee paid out the accumulated funds to the creditors as provided for in the plan. In fact, in December 2011, the Third Circuit Judicial Council approved the Western District of Pennsylvania Local Bankruptcy Rule

---

[1]Generally, the benefits available to a debtor under a Chapter 13 plan of reorganization are the saving of a residence from foreclosure, the curing a mortgage delinquency over time with more affordable payments, the maintaining of possession and use of an automobile or other personal property, and the automatic stay.

3021-1(f), which provides that "[i]n the event of conversion or dismissal following the confirmation of a chapter 13 plan, then the chapter 13 trustee shall distribute all funds received prior to the effective date of the conversion or dismissal, in accordance with the terms of the confirmed plan." The Clerk of the Bankruptcy Court for the Western District of Pennsylvania believes that this rule codified a long time practice, going back to 2004. This rule -- or practice -- has not been challenged until, in this case, the sum held by the trustee became a sizeable one. The issue then is: Who gets the benefit of this windfall, the debtor or the creditors?

To answer this question, we must determine whether these funds -- on conduit through the trustee to the creditors in accord with the confirmed plan -- are property of the Chapter 13 estate.

As the Majority observes, prior to the Bankruptcy Reform Act of 1994 (Act), courts were sharply divided on whether post-petition and post-confirmation property, which was acquired by the debtor during a Chapter 13 case, remained property of the bankruptcy estate or was returned to the debtor upon the estate's conversion to Chapter 7. *Compare Resendez v. Lindquist*, 691 F.2d 397, 399 (8th Cir. 1982) *with Bobroff v. Cont'l Bank* (*In re Bobroff*), 766 F.2d 797, 803 (3d Cir. 1985). The Act sought to resolve this dispute with the amendment to § 348, which provided that "when a case under chapter 13 . . . is converted to a case under another chapter," 11 U.S.C. § 348(f)(1), the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion," *id.* at § 348(f)(1)(A).

3

I agree that the amendment described what became of property or rights to property acquired by the debtor during the pendency of the Chapter 13 proceedings. I have no argument against this interpretation. Mr. Bobroff[2] keeps his potential tort recovery and Mr. Lybrook[3] keeps the farm land inherited from his father because the tort recovery and the farmland inheritance were not property of the estate as of the date of the filing of the petition.[4] To the extent that Michael's wages were not attached, the amendment also covered these unattached wages earned during the course of the Chapter 13 bankruptcy. On conversion, these wages would not be transferred to the Chapter 7 estate. S*ee Stamm v. Morton (In re Stamm)*, 222 F.3d 216, 217 (5th Cir. 2000) ("Section 348(f)(1), where applicable, establishes that the [debtors'] post-petition income does not remain property of the estate upon conversion"). There is simply no language that suggests otherwise. *See e.g., In re Pegues*, 266 B.R. 328, 331-32 (Bankr. D. Md. 2001); *In re Bell*, 248 B.R. 236, 239 (Bankr. W.D.N.Y. 2000); *In re Hardin*, 200 B.R. 312, 313 (Bankr. E.D. Ky. 1996).

However, we are not dealing simply with wages here but with that portion of the wages that had been attached

---

[2]*Bobroff*, 766 F.2d at 803.

[3]*Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991).

[4]I would note, however, that neither the *Bobroff* nor the *Lybrook* Chapter 13 plans were confirmed. A confirmed plan would have dealt with these property expectations during the period of reorganization. It would appear that the consideration of these additional assets may be a factor in the failure of approval of a plan of reorganization.

under the plan and paid to the trustee for distribution to the creditors. I maintain that there is a crucial difference. It is my position that, although the debtor's unattached wages earned during the reorganization period will not be included in the Chapter 7 estate, the attached wages that have been paid to the trustee pursuant to the plan should be. Under the plan, these wages are under the supervision and control of the trustee.[5] Because these funds are under the supervision and control of the trustee, they should be paid out by the trustee in accord with the provisions of the plan. Moreover, the attached wages are the *quid pro quo* that the debtor has given up during the pendency of the reorganization in return for being permitted to stave off foreclosure and cure the mortgage default, retain the use of his automobile, and enjoy the automatic stay.

The Majority depends on *Bobroff* to support its decision. However, a careful analysis of *Bobroff* reveals that the Court's decision was motivated by its fear of potential inequities that might result when the recovery from a debtor's post-petition litigation was included in a converted Chapter 7 estate. Central to the Court's decision was the notion that creditors should not receive a windfall from funds that would not have been in the bankruptcy estate if the initial filing had been for a Chapter 7 proceeding. According to the Court, such a result would be inconsistent with the Bankruptcy

---

[5]The plan provides in paragraph 1 that "[t]he future earnings of the Debtor are submitted to the supervision and control of the trustee – Debtor's employer shall pay to the Trustee the sum of **$138.62 bi-weekly, beginning in May, 2006** for a period of **53 months**, plus $1,294.67 paid as of April 4, 2006."

5

Code's goal of encouraging debt repayment. *See Bobroff*, 766 F.2d at 803. If a debtor had to risk losing either all or a portion of the property he acquired during his repayment attempt, the incentive to try voluntary repayment would be substantially diminished. *Id.* The Court, therefore, opined that post-petition funds should revert to the debtor in order to ensure that both the creditors and debtor would be returned to "precisely the same position they were in had the debtor never sought to repay his debts . . .." *Id.*[6]

The concerns the Court expressed in *In re Bobroff*, however, are not present in Chapter 13 proceedings where a debtor derives a benefit from the confirmed bankruptcy plan. Once a reorganization plan is confirmed, the relationship between the debtors and creditors change; the provisions of the plan bind the parties, generating benefits and corresponding responsibilities. 11 U.S.C. § 1327(a); *see Ledford v. Burns* (*Matter of Burns*), 90 B.R. 301, 304 (Bankr. S.D. Ohio 1988) ("[A] Chapter 13 Plan represents a legislatively sanctioned, and judicially approved new series of rights and responsibilities among the debtor and the debtor's creditors"). In fact, under a confirmed plan, each party receives a benefit. The debtor is entitled to continue "receiving whatever benefits []he believed were significant enough for [him] to have converted to and proceeded in

_____

[6]Of course, *Bobroff* is also distinguishable from this case in the fact that the Court in *Bobroff* held that because the debtor was not eligible for Chapter 13, "the conversion to that chapter was void *ab initio* and the provisions of § 1306 cannot be invoked to determine which property comprises the estate." *Bobroff*, 706 F.3d at 803.

6

Chapter 13,"[7] *In re Bell*, 248 B.R. at 239, and the creditors receive the money paid into the Chapter 13 estate, *In re Pegues*, 266 B.R. at 336. Thus, the debtor makes payments in order to fulfill his obligations under the reorganization plan and in exchange for the benefits he derives from the plan.[8] *In*

---

[7]Although varied, the benefits a debtor receives may include: saving a residence from foreclosure, curing a mortgage delinquency over time with more affordable payments, maintaining possession over an automobile or other personal property, or having the benefit of the automatic bankruptcy stay remain in place for an extended period of time.

[8]Conversion does not retroactively alter this arrangement and undo the benefits the debtor received from the plan. *See e.g.*, *In re Pegues*, 266 B.R. at 336; *In re Galloway*, 134 B.R. 602, 603 (Bankr. W.D. Ky. 1991); *Waugh v. Saldamarco*, (*In re Waugh*), 82 B.R. 394, 398-99 (W.D. Pa. 1988); *In re Redick*, 81 B.R. 881, 887 (E.D. Mich. 1987). The funds the debtor paid were in exchange for the benefits of the reorganization plan. Revocation of the plan only alters this dichotomy going forward; it does not "retroactively revoke the intent," *In re Bell*, 248 B.R. at 239, that debtors had when they initially chose to file under Chapter 13; nor does it retroactively alter the fact that a debtor made payments "to continue to enjoy the ongoing benefits of that plan," *id* at 240.

The Bankruptcy Code supports this view. Sections 1326(a)(2) & (c) affirmatively set forth the Chapter 13 trustee's obligation to distribute a debtor's payments to creditors pursuant to the terms of the confirmed plan. *See* 11 U.S.C. § 1326(a)(2) & (c). Although § 348(e) terminates the

*re Bell*, 248 B.R. at 239; *see In re Lennon*, 65 B.R. 130, 136 (N.D. Ga. 1986) ("These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan").

Here, unlike in *Bobroff*, the payments Michael made were in exchange for the benefits he derived from the plan. Therefore, if the undistributed funds revert to him, instead of being distributed to the creditors in accordance with the plan's terms, Michael would receive a windfall. *See O'Quinn v. Brewer* (*In re O' Quinn*), 143 B.R. 408, 413 (Bankr. S.D. Miss. 1992) ("It appears to this Court to be patently unfair to allow a debtor to drive and depreciate an automobile, occupy a home or use household goods based on a promise to his creditors in the form of a court approved plan, and then allow the debtor to snatch away the monies which the trustee is holding to make the payments, but has not yet disbursed, by allowing the debtor to pick an opportune time to convert"). He would obtain the benefits the confirmed plan offered

services of the trustee when a case is converted to chapter 7, the trustee is still required to perform certain tasks. *See* Fed. R. Bankr. P. 1019. Federal Rule of Bankruptcy Procedure 1019 details several of these post-conversion duties. *See e.g., id.* at 1019(4), 1019(5)(B)(ii). Thus, the Rule demonstrates that Congress did not intend § 348(e) to be interpreted too literally. Since Congress intended for the trustee to perform several ancillary duties to clean-up and finalize the administration of the estate, *In re Parrish*, 275 B.R. 424, 430 and & n.7 (Bankr. D. Colo. 2002), there is no logical reason why distribution of funds pursuant to the previously confirmed reorganization plan cannot be included as one of those administrative duties.

without having to pay his creditors. Such a result would not only be patently unfair, but also contradict the reasoning of *Bobroff*.[9] Michael would be in a better position (and his creditors in a worse position) than he would have been if he had initially filed for bankruptcy under Chapter 7.

Therefore, my interpretation of § 348(f) will not discourage voluntary debt repayment under Chapter 13. It merely requires debtors to honor their obligations to creditors as was agreed under the confirmed plan. *In re Bell*, 248 B.R. at 240. I hope that we will not see the reversal of a Third Circuit practice that over the years has balanced the benefits to both parties under a plan of reorganization by providing that the undistributed funds held by the trustee will be distributed to the creditors pursuant to the confirmed plan. If we adopt the Majority's position, we will be permitting a windfall in this unusual case where inaction by the debtor and by the trustee has permitted funds to accumulate in a situation in which that normally would not occur.

For the above reasons, I respectfully dissent.

---

[9]Although the Majority does not explicitly state, it implies that § 348(f)'s bad faith provision, *see* 11 U.S.C. § 348(f)(2), would prevent this type of harm from befalling creditors. This argument is unconvincing. One can conjure many scenarios where a debtor files for Chapter 13 bankruptcy, with *bona fide* intentions of repaying his financial obligations, only to discover that he miscalculated his ability to repay his creditors. This type of conduct cannot be characterized as "game-the-system" behavior.

9